IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. SCOTT, | : | PRISONER CIVIL RIGHTS |
| Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| THOMAS E. BROWN, et al., | : | CIVIL ACTION NO. |
| Defendants. | : | 1:11-CV-1811-TWT-JFK |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

This action was allowed to proceed against Sergeant Lacey, Officer L. Williams, Officer L. Brown, Nine Unknown Jail Emergency Service Team (JEST or J.E.S.) members, Sheriff Thomas E. Brown, and Major Scandrett. The matter is before the Court on Defendants' motion for summary judgment, (Doc. 40), Plaintiff's response, (Doc. 43), and Defendants' reply, (Doc. 44). For the reasons stated below, the undersigned recommends that Defendants' motion be granted.

**I.   Background**

Plaintiff complained regarding events that occurred on May 4, 2011, at the DeKalb County Jail as follows:

> Although there was no riot or disruption in Plaintiff's pod, Officer Brown[, a JEST[1] Team member and nine other] JEST officers entered the pod and shot talcum powder bullets. They conducted a cell search while the prisoners were sitting on the floor and facing the wall in the dining room with their hands on their heads. Officer Brown warned the inmates that anyone who had broken a prison rule would be dealt with painfully and severely. Officer Brown asked who had rigged the door, and Plaintiff raised his hand. Plaintiff was placed in handcuffs and three JEST officers, for approximately five minutes, walked him "the long way" in a manner that causes intense pain to the wrists, elbows, and shoulders. They took Plaintiff back to his cell, took off his handcuffs, made him kneel, and told him to crawl to the back of his cell. Plaintiff stood up to get on his bunk, and five JEST officers beat him and "shot" him (apparently with a taser gun or with a talcum powder bullet). Plaintiff was again placed in handcuffs and three JEST officers walked him the "long way" to the medical unit. The more Plaintiff begged them to stop the painful pressure, the more they increased the pressure. Afterward, they returned Plaintiff to his cell and said they were going to "try this again." Plaintiff was instructed to get on his knees and crawl to the back of his cell. Apparently there was no additional use of force at that time. . . . Plaintiff suffered from facial swelling, bruises, and taser burns. Sergeant Lacey and Officer Williams watched the incident and did not intervene. Plaintiff's experience was not an isolated incident because the officers previously had conducted a similar search and had beaten another prisoner. . . . Sheriff Brown implemented use of the JEST team and is the policy maker for the jail. Sheriff Brown and Major Drett ordered the JEST team to act oppressively, and the JEST team has done so in at least four [specific] incidents in August 2010 and May and July 2011.

(Doc. 12 at 4-5 (citation omitted)). The Court allowed Plaintiff to proceed on individual-capacity excessive force claims, under the Due Process Clause as a pre-trial

---

[1]JEST or J.E.S. stands for Jail Emergency Service Team.

detainee, against Sergeant Lacey, Officer Williams, Officer Brown, Nine Unknown JEST Team Members, Sheriff Brown, and Major Scandrett.² (Id. at 11).

## II. The Motion for Summary Judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court

---

²Plaintiff did not attempt to identify or serve the Nine Unknown JEST Team Members. (See Docs. 17-21).

3

may . . . consider the fact undisputed for purposes of the motion [for summary judgment.]" Fed. R. Civ. P. 56 (e)(2).

The Court's local rules (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide responses to each of the movant's numbered undisputed material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation. LR 56.1 B.(1),(2), NDGa. Specifically, the local rules require, along with a responsive brief, a response to the movant's statement of undisputed facts –

(1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

(2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1 B.(2)a., NDGa.

Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of

4

undisputed facts. Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." Id. The Court must then review the movant's statement of undisputed facts and ensure – by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment" – that the movant's statement of facts is in fact supported. Id. at 1269 (quoting United States v. One Piece of Real Property, 363 F.3d 1099, 1101-02 (11th Cir. 2004)) (internal quotation marks omitted).

### B. Defendant's Statement of Undisputed Facts and Argument

Defendants list the following facts as undisputed.

21.

Sheriff Brown did not want an aggressive, elitist, Gestapo-like tactical force similar to the type that resulted in the demise of the Atlanta Red Dog unit and insisted that any tactical force team use the absolute minimum force necessary to keep order. (T. Brown aff., ¶ 5).

5

. . .

26.

Major Scandrett's goal in having good polices was to make sure that the J.E.S. Team represented the best in professionalism, training and integrity. (Scandrett aff., ¶ 7).

. . .

36.

On May 4, 2011, Scott was housed in the 6 SE 200 housing unit of the DeKalb County Jail. (Admissions, ¶ 1; Lacy aff., ¶ 7; Williams aff, ¶¶ 6-7).

37.

Both Sgt. Lacy and Officer Williams were in the housing tower during the cell search operation. (Lacy aff., ¶ 7; Williams aff., ¶ 6).

38.

On that same date, the Jail Emergency Service Team "J.E.S. Team" conducted a tactical cell search. (Admissions, ¶ 2; Lacy aff., ¶ 7; Williams aff., ¶ 6).

39.

When the J.E.S. Team arrived on the floor, all inmates were given directives to remain quiet while the operation was completed. (Admissions, ¶ 3).

40.

Plaintiff Scott did not remain quiet during the cell search. (Admissions, ¶ 4; Lacy aff., ¶ 7).

41.

Plaintiff Scott was told several times by J.E.S. Team members to be quiet. (Admissions, ¶ 5; Lacy aff, ¶ 7).

42.

Plaintiff Scott did not remain quiet even after repeated commands to do so by J.E.S. Team members. (Admissions, ¶ 6; Lacy aff., ¶ 7).

43.

Because he did not comply with the J.E.S. Team's commands, Plaintiff Scott was escorted to his cell, 6 SE 205. (Admissions, ¶ 7; Lacy aff., ¶ 8).

44.

Plaintiff Scott was placed in handcuffs when he was escorted to his cell. (Admissions, ¶ 8; Lacy aff., ¶ 8).

45.

When Plaintiff Scott got to cell 205, he was instructed to kneel. (Admissions, ¶ 9).

46.

Plaintiff Scott was instructed to kneel so that his hand restraints would be removed. (Admissions, ¶ 10).

47.

Once the handcuffs were removed, Plaintiff Scott was instructed to stand up and walk to the rear of the cell. (Admissions, ¶ 11).

48.

In addition, Plaintiff Scott was instructed that once he reached the rear of the cell, he was to face the wall until all officers had exited the cell. (Admissions, ¶ 12).

49.

Plaintiff Scott was further instructed that once all officers had exited the cell, he was to sit on his bed. (Admissions, ¶ 13).

50.

Once Plaintiff Scott's handcuffs were removed, he took a few steps towards the rear wall. (Admissions, ¶ 14).

51.

Rather than sitting on the bed, Scott turned towards the cell entrance and kicked a grey storage bin towards one of the J.E.S. Team members. (Admissions, ¶ 15).[3]

52.

Plaintiff then turned towards the J.E.S. Team members with raised hands, fists clinched looking like he had the intent to start a physical altercation. (Admissions, ¶ 16).

53.

Seeing Plaintiff's actions, two J.E.S. Team members grabbed him by his arms. (Admissions, ¶ 17).

---

[3] Plaintiff has admitted that he kicked the bin when he was returned to his cell. (Doc. 43, Ex. 2 ¶ 17).

54.

As they struggled, Plaintiff and the two J.E.S. Team members fell on the bottom bunk. (Admissions, ¶ 18).

55.

After they fell on the bunk, Plaintiff was tased because he continued to struggle and resist their commands to stop struggling.[4] (Admissions, ¶ 19; Lacy aff., ¶ 9).

56.

After Plaintiff was tased, J.E.S. Team members were able to re-handcuff Plaintiff. (Admissions, ¶ 20; Lacy aff., ¶ 9).

57.

As a precaution, Plaintiff was taken to the infirmary after he was tased. (Admissions, ¶ 21; Lacy aff., ¶ 10).

58.

Sgt. Lacy took two pictures of Scott while he was in the infirmary: one of his face and the other of the area where he said he was tased. (Lacy aff., ¶ 10, Ex. A).

59.

The medical staff at the infirmary examined Plaintiff and cleared him to return to his housing unit. (Admissions, ¶ 22; Lacy aff., ¶ 11).

60.

Defendant Williams and Sgt. Lacy were able to see into the pod, but neither of them were able to see what was going on inside the cell itself because there were too many officers in the way. (Williams affidavit, ¶ 7).

61.

Neither Officer Williams nor Sgt. Lacy were in a position to render assistance to the officers inside the cell nor verbally instruct them because

---

[4]Plaintiff indicates that the officers used the taser one time, and the Court finds that there is no dispute on this issue. (See Doc. 43 at 7 and Ex. 2 ¶¶ 21-22).

of the inability to see what was going on inside the cell.[5] (Id., ¶ 7; Lacy aff., ¶ 8).

62.

Officer Brown was not present on the floor during the alleged events as he had left work at around 3:15 p.m. (L. Brown affidavit, ¶ 6).

63.

Officer Brown was not involved in any manner in the search of Plaintiff's pod at around 6:00 on May 4, 2011 nor is he aware of anything that occurred during that search. (Id., ¶ 7).

64.

Sheriff Brown had no personal contact with inmate Christopher Scott during his incarceration at the Jail and has no personal knowledge of him. (T. Brown aff., ¶ 8).

(Doc. 40, Statement of Undisputed Facts at 5-6, 7, 9-15).

Defendants have submitted a copy of Lacy's affidavit in which Lacy states (1) that he saw Plaintiff moving off the wall and talking with other inmates in disregard of officers' instructions and saw officers handcuff Plaintiff and take him to his cell after he was given "enough" chances to comply with orders; (2) that allowing one prisoner to disregard direct orders can become contagious and compromise the safety of officers; (3) that Plaintiff was transported to medical using a "tactical escort"

---

[5]Lacy states in his affidavit that, from his place in the tower, he saw Plaintiff handcuffed and taken to his cell; that he could not see what happened inside Plaintiff's cell but could tell that something was going on; that he left the tower; and that, as he approached Plaintiff's cell, he heard the taser. (Doc. 41, Aff. of Rodger Lacy ¶¶ 8-9).

Williams states in his affidavit that he did not see anything that happened in Plaintiff's cell and that he did not leave the tower on the day in question. (Doc. 41, Aff. of Luther Williams ¶7).

9

– a method that is not intended to cause harm, that does not place pressure on the inmate's shoulder or rotator cuffs, and is only uncomfortable if the inmate struggles; and (4) that he did not recall Plaintiff complaining of pain or discomfort while being escorted to medical. (Doc. 41, Lacy Aff. ¶¶ 7-8, 12).

Defendants argue that Officer Brown is entitled to summary judgment because he had left work and was not present at the time of the alleged incident. (Doc. 40, Br. at 7). Defendants argue that Sergeant Lacey and Officer Williams are entitled to summary judgment because they could not see the events that occurred in Plaintiff's cell and were not in a position to intervene. (Id. at 7-8). Defendants argue that Sheriff Brown and Major Scandrett are entitled to summary judgment because Plaintiff's constitutional rights were not violated. (Id. at 8). Defendants assert that it is undisputed that Plaintiff was non-complaint, refused to follow repeated commands to be quiet, kicked a bin toward the officers after he was returned to his cell, and turned toward the officers with raised fists.[6] (Id. at 1, 11, 14). Defendants argue that

---

[6]Defendants assert that Plaintiff failed to timely respond to their requests to admit and include Plaintiff's "admissions" as undisputed facts. (Doc. 40, Statement of Undisputed Facts at 1 n.1). On September 21, 2012, Defendants certified service on Plaintiff of their requests to admit. (Doc. 29; see also Doc. 41, Requests to Admit). In September 2012, there was no discovery period operative in this action, and on October 11, 2012, the Court construed Defendants' certificates of discovery as a request for a discovery period and placed this action on a four-month discovery track, effective October 11, 2012. (Doc. 32). The record does not indicate that Defendants

(1) handcuffing and walking Plaintiff back to his cell when he refused to heed repeated commands to be quiet during the cell search operation, (2) attempting to restrain and re-handcuff Plaintiff after he was returned to his cell when he kicked a bin toward the officers and raising clenched fists toward the officers, (3) using a taser when Plaintiff resisted the officers commands to stop struggling, and (4) re-handcuffing Plaintiff and walking him to the infirmary were all justified to minimize disruption to the pod and to promote safety. (Id. at 1-2). Defendants argue that although Plaintiff has alleged that he suffered facial swelling, bruising, and taser burns, copies of the contemporaneous photographs taken of Plaintiff[7] bear no evidence of such injuries, thus indicating that the officers did not use unconstitutional force. (Id. at 13-14). Defendants further argue that Sheriff Brown and Major Scandrett are entitled to

---

served Plaintiff with a renewed request for admissions after the discovery period in this action opened. Notwithstanding, on November 22, 2012, Plaintiff certified service of his response to Defendants' pre-discovery requests for admissions. (Doc. 34; see also Doc. 32, Ex. 2). The Court finds that the timing of Plaintiff's response does not provide grounds for finding that Plaintiff has admitted to Defendants' requests to admit. Moreover, Fed. R. Civ. P. 36, governing admissions, "is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial*'" not to prove contested and essential matters. Perez v. Miami-Dade County, 297 F.3d 1255, 1268 (11th Cir. 2002) (citation omitted; emphasis in original).

[7]The scanned copies of the photographs of Plaintiff, dated May 4, 2011, at 18:26 show no visible injury to Plaintiff's face or front torso that the Court can discern. (Doc. 47, Ex. A).

summary judgment because they were not directly involved in the alleged incident and because there is no evidence to support Plaintiff's claim that they implemented a policy that the JEST Team act oppressively. (Id. at 17-18).

### C. Plaintiff's Response

In response, Plaintiff raises a discovery issue, presents a condensed version of the facts as seen by Plaintiff, and disagrees with Defendants' assertion that he failed to respond in a timely manner to Defendants' requests to admit. (Doc. 43 at unnumbered pages 2-7). Plaintiff contends that discovery is not yet complete and that the Court should deny summary judgment to allow for additional discovery – apparently in regard to the dorm surveillance tape on the date of the incident.[8] (Id. at 2-4). Although Plaintiff presents an unsworn condensed version of the facts as seen by Plaintiff (that he never said or did anything to justify the use of allegedly excessive

---

[8] During the discovery period Plaintiff filed a motion seeking production of film and documents. (Doc. 35). That motion was denied, and Plaintiff was instructed that discovery requests should be served on the opposing party and that court action was not generally required unless there was a discovery dispute and a party, after a good faith attempt to resolve the dispute, filed a motion to compel discovery. (Doc. 36). Defendants state that, although Plaintiff did not serve them properly with a discovery request, they construed his motion seeking production as a discovery request and served Plaintiff with a response to that request. (Doc. 44 at 6; see also Doc. 43, Ex. 1). Defendants state that Plaintiff did not challenge that response. (Doc. 44 at 6). Additionally, the Court's records show that Plaintiff did not file a motion to compel during the discovery period. (See docket from October 11, 2012, through February 11, 2013).

12

force), he does not provide a response, in compliance with LR 56.1, to Defendants' statement of undisputed facts.

### D. Law and Recommendation

#### 1. Plaintiff's Discovery Request

As a preliminary matter, Plaintiff's request for additional discovery will not be granted. Under Fed. R. Civ. P. 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" allow time to take discovery. Here, the parties had a four-month discovery period. Plaintiff did not utilize that period to pursue any dispute regarding discovery of dorm surveillance tapes, and the Court finds that additional discovery is unwarranted.

#### 2. Motion for Summary Judgment

Plaintiff's "response to the motions for summary judgment did not 'contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's enumerated material facts[,]'" and Defendants' statement of undisputed facts are deemed admitted. Williams v. Slack, 438 F. App'x 848, 850 (11th Cir. 2011) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009)). Accordingly, the Court has reviewed the evidentiary material submitted by Defendants in support of the undisputed facts to ensure that those facts are supported by the record,

13

see Reese, 527 F.3d at 1269, and determines as follows. The alleged untimeliness of Plaintiff's response to Defendants' requests to admit cannot be used to support Defendants' facts for which there is no other evidentiary support. See supra n.6. Otherwise, the record shows (1) that Plaintiff was escorted to his cell in handcuffs for failure to obey orders, (Doc. 41, Aff. of Rodger Lacy ¶¶ 7-8); (2) that Plaintiff kicked a bin in his cell when he was returned to his cell, (Doc. 43, Ex. 2 ¶ 17); (3) that the officers entered Plaintiff's cell after he kicked the bin and used a taser one time on Plaintiff, (Doc. 41, Aff. of Rodger Lacy ¶ 9); (5) that Plaintiff was re-handcuffed and walked to medical, (id., ¶ 12); (6) that the method used to handcuff Plaintiff is not intended to cause harm and is uncomfortable only if the inmate struggles, (id.); (7) that the photograph of Plaintiff's front torso shows the area where he received the taser shot and that photo reveals no noticeable injury, (id., ¶ 10; Doc. 47, Ex. A); (8) that the medical staff examined Plaintiff and cleared him to return to his unit, (Doc. 41, Aff. of Rodger Lacy ¶ 11); (9) that Officer Brown was not present at the day and time in question, (id., Aff. of Louis Brown ¶ 7); and (10) that Lacey and Williams were unable to see the cell altercation from their position in the tower or to intervene, (id., Aff. of Rodger Lacy ¶ 8-9 and Aff. of Luther Williams ¶ 7).

The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and from the use of excessive force, and excess force

14

claims are analyzed under the Eighth Amendment standard that is applied to excessive force claims by convicted prisoners.  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005); Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004).  Force does not offend the Constitution if it is used "in a good-faith effort to maintain or restore discipline."  Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (internal quotation marks omitted) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  "However, if the force is applied 'maliciously and sadistically to cause harm,' then it does 'shock the conscience,' and is excessive under the Eighth or Fourteenth Amendments."  Id. (quoting Hudson, 503 U.S. at 7).

> We consider the following factors in determining whether the force was applied maliciously and sadistically to cause harm, and thus violated the Fourteenth Amendment:  a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response.

Id. at 1217 (citing Cockrell v. Sparks, 510 F.3d 1307, 1311(11th Cir. 2007)).  "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance" if he "was in a position to intervene yet failed to do so."  Crenshaw v. Lister, 556 F.3d 1283, 1293-94 (11th Cir. 2009) (internal quotation marks omitted) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008)).

15

To state a claim of supervisory liability, a prisoner must show that "the supervisor personally participate[d] in the alleged constitutional violation" or that "there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks omitted) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). A causal connection is shown if (1) the supervisor is on notice of historical widespread abuse and has not taken corrective action, (2) the supervisor has a custom or policy that resulted in the alleged violation, or (3) "facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id. (citing Cottone, 326 F.3d at 1360).

Here, it is undisputed (1) that Plaintiff disobeyed orders and continued to talk and move during the tactical search of his pod and (2) that allowing one prisoner to disregard orders can become contagious and compromise the safety of the officers. The use of handcuffs to control Plaintiff was not excessive in the circumstances. Further, the handcuffing technique used on Plaintiff is a technique that is not intended to cause harm and that causes discomfort only when the handcuffed person struggles. The Court cannot find that the technique at issue was used maliciously or sadistically to cause harm. Further, the Court cannot find that the one-time use of the taser

16

constituted excessive force in light of (1) Plaintiff's prior and repeated refusal to obey orders and his kicking of a bin when he was returned to his cell at a time when the officers were attempting to maintain order and conduct a tactical cell search in Plaintiff's pod and (2) Plaintiff's lack of injury, as shown by the photograph of Plaintiff's torso and the decision of the medical department to release Plaintiff to be returned to his cell.  Cf. Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding no excessive force based on one-time use of taser on stopped truck driver, who "was hostile, belligerent, and uncooperative" and had refused to comply with instructions to retrieve documents from his vehicle).  Here, as in Draper, the single use of the taser "may well have" prevented a harmful escalation of events.  Id.  Because the undisputed facts do not show a constitutional violation, this action should be dismissed.

      Additionally, even if the Court did not find that the taser use met constitutional standards, this action is otherwise subject to dismissal.  Officer Brown should be dismissed because it is undisputed that he was not present at the time of the alleged incidents. Sergeant Lacy and Officer Williams should be dismissed because they had no duty to intervene in regard to Plaintiff's handcuffing (which did not offend the Constitution) and because it is undisputed that they could not see what occurred in Plaintiff's cell and were not in a position to intervene in regard to the use of the taser.

Sheriff Brown and Major Scandrett should be dismissed because it is undisputed that they were not directly involved in the alleged incidents and because their policy for the JEST team was one of professionalism and the use of absolute minimum force, not a policy of using excessive force. The only remaining Defendants are the nine unnamed JEST officers, whom Plaintiff has not served in the more than 120 days since he filed his complaint. See Fed. R. Civ. P. 4(m) (dictating, absent a showing of good cause, dismissal of defendants not served within 120 days of the filing of a complaint).[9]

## III. Conclusion

**IT IS RECOMMENDED** that Defendants' motion for summary judgment, (Doc. 40), be **GRANTED**; that all claims against Sergeant Lacey, Officer L. Williams, Officer L. Brown, Sheriff Thomas E. Brown, and Major Scandrett be **DISMISSED**; that the Nine Unknown JEST Members be **DISMISSED** without prejudice; and that this action be **DISMISSED**.

The Clerk of Court is **DIRECTED** to withdraw the referral to the undersigned Magistrate Judge.

---

[9]This Report and Recommendation provides notice to Plaintiff that the JEST officers are subject to dismissal for lack of service.

18

**IT IS SO RECOMMENDED and DIRECTED** this 17th day of July, 2013.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE